GEORGE B. WILLIAMS AND WIFE V. M. E. POUNS.

1. APPEAL SUSPENDS AN INJUNCTION.—An injunction in full force and effect when the final judgment was rendered, from which an appeal is prosecuted, remains in force while the judgment is suspended or superseded by the appeal.
2. CERTIFICATE OF OFFICER TO PRIVY ACKNOWLEDGMENT FINAL.—A married woman, in the absence of fraud, or of knowledge thereof on the part of the beneficiaries in a trust deed, given on a *bona-fide* consideration, cannot impeach the certificate of the officer taking her privy acknowledgment.
3. INJUNCTION—LIMITATION.—An injunction suspending sale of property claimed as homestead, or as separate property of the wife, under a trust deed to secure promissory notes, will have the effect of suspending the statute of limitations as to the notes.
4. TRUST SALE.—A trust deed requiring sales to be made at the court-house of the county, is properly executed by sale at the court-house of a newly-organized county which includes the land sold.

APPEAL from Morris.   Tried below before the Hon. B. F. Estis.

September 23, 1876, M. E. Pouns brought suit against George B. Williams and his wife Sarah, for two tracts of land, (one of 320 acres, and the other of 160 acres,) situated in the county of Morris.   The petition set out, that plaintiff claimed the land under a sale made under a deed of trust, by one James R. Bridges, trustee, &c.; that the deed of trust bore date December 23, 1870, and was executed to secure two promissory notes due February 1, 1872, for borrowed money; that in July, 1875, the trustee had advertised the sale of the lands, under the trust, for the first Tuesday in August, but was enjoined, at suit of Williams and wife, from sale on July 28, 1875; that the injunction was dissolved in April, 1876, and the trustee, on July 6, next thereafter, sold said lands to plaintiff, at Dangerfield, the county seat of Morris county, where the land was situated.

The defendant, Mrs. Williams, pleaded the injunction as still in force, having perfected an appeal to the Supreme

Court from the judgment dissolving the injunction; that the land was her separatè property, and the homestead of the family; that the notes secured by the trust deed were barred by limitation at the date of the trust sale; that the deed of trust was executed for an antecedent indebtedness; that the trustee had not complied with the terms of the deed, as to place of sale, in making it; and, under oath, that Mrs. Williams had been imposed on in said trust deed, and had not signed and delivered the same, nor had she privily acknowledged the same, in the manner and form prescribed by law.

On the trial, the trust deed from Williams and wife, being an exhibit to the petition, was objected to when offered, not having been filed and three days' notice given, as under the statute. The objection was sustained, when the certificate of the notary, in the usual statutory form, of the privy examination of Mrs. Sarah Williams, was admitted as evidence of its execution by the wife. The deed required sale to be made at the court-house door, as under execution. The deed of the trustee was then read in evidence, conveying the lands to the plaintiff. It was further shown, that prior to the trust deed, the notes had been secured by lien on nine or ten bales of cotton, and that, at request of plaintiff Williams, the cotton had been released, and the trust deed on the lands in controversy substituted.

Defendants proved that at the date of the execution of the trust deed, the land was situated in Titus county, of which Mount Pleasant was county seat; that the trustee's sale had been made in Dangerfield, the county seat of Morris county, in which the lands were situated; that Morris county was organized in the spring of 1875.

The testimony as to the wife's privy acknowledgment was contradictory, she and the notary swearing—one contradicting the certificate of acknowledgment, the other supporting it. There was some testimony that the lands were the separate property of Mrs. Williams.

The beneficiaries of the trust deed were not connected in the evidence with any knowledge of the alleged imposition upon the wife in executing the trust deed.

The plaintiff, rebutting, read the proceedings in the injunction suit, showing the issuance of injunction in July, 1875, and its dissolution in April, 1876.

The court excluded evidence showing that the injunction suit had been appealed from, and was pending in the Supreme Court.

Judgment was rendered for the plaintiff, and the defendants appealed.

The errors are discussed in the opinion of the court.

*W. J. McDonald*, for appellants, cited 2 Phill. on Ev., 585; Morris *v.* Wadsworth, 17 Wend., 103; Ledbetter *v.* Burns, 42 Tex., 508; Griffin *v.* Wakelee, 42 Tex., 513; Duty *v.* Graham, 12 Tex., 437; Ross *v.* Mitchell, 28 Tex., 150.

*Turner & Turner*, for appellee.

I. We maintain, that it makes no difference what attacks are made by *feme-coverts* upon their deeds; the only way that they can be proven is by the certificate of privy acknowledgment, and that is always *prima-facie* true, and admissible upon its face. Any other rule would place the party who relies upon it to the necessity of proving the acknowledgment in a way unknown to the law, or of accepting the charges against the certificate as true upon *ex-parte* showing, which would be very unreasonable and unjust. (Fulton *v.* Bayne, 18 Tex., 50; Berry *v.* Donley, 26 Tex., 738; Paschal's Dig., art. 3710.)

II. The injunction was not revived by the appeal. (High on Injunctions, sec. 893, and authorities there cited; also, same, sec. 41; Tucker on Corp., 441; Kerr on Injunctions in Equity, 635, 636.)

III. The beneficiary of the trust deed had no knowledge of any fraud, and was not affected by it. (Hartley *v.* Frosh,

6 Tex., 208; Shelby *v.* Burtis, 18 Tex., 644; Daniel on Negotiable Notes, secs. 184, 780.)

IV. The injunction stopped limitation on the notes. (Ellis *v.* Batts, 26 Tex., 703; High on Injunctions, secs. 20, 852; Kerr on Injunctions in Equity, 638, 639.)

V. The sale was made in the proper county. (Alred *v.* Montague, 26 Tex., 732.)

VI. Both parties claimed the same title, and it was not necessary for plaintiff to go behind the trust deed. (Wilson *v.* Palmer, 18 Tex., 592.)

MOORE, ASSOCIATE JUSTICE.—The vital question to be decided in this case is,—Does an appeal from a final judgment dissolving the injunction and dismissing the bill, where the condition of the appeal bond is that appellant will prosecute the appeal with effect, and perform the judgment, sentence, or decree of the Superior Court in case the decision of said court shall be against the appellant, (Paschal's Dig., art. 1491,) keep the injunction in force during the pendency of the appeal?

It is not to be denied, that in England, and a majority, perhaps, of the States, it is well settled, that an appeal from the judgment dissolving the injunction will not have this effect. "An appeal," says Mr. High, in his work on Injunctions, (sec. 893,) "from a decree dissolving an injunction does not have the effect of reviving and continuing the injunction itself, since the process of the court, when once discharged, can only be revived by a new exercise of judicial power. An appeal being merely the act of the party, cannot, of itself, affect the validity of the order of the court; nor can it give new life and force to an injunction which the court has decreed no longer exists. It follows, therefore, that an appeal from a decree dissolving an injunction which had been granted to stay proceedings under an execution at law, cannot have the effect of reviving the injunction, so as to operate as a stay of the proceedings at law; and the plaintiff in

execution may proceed to enforce his judgment, notwithstanding the appeal." (Wood *v.* Dwight, 7 Johns. Ch., 295; Hoyt *v.* Gelston, 13 Johns., 139; Chegary *v.* Scofield, 1 Halst. Ch., 525; Garrow *v.* Carpenter, 4 Stew. & Port., 336.)

The contrary doctrine is maintained by the courts of Kentucky, Virginia, and Mississippi. (Yocum *v.* Moore, 4 Bibb, 221; Turner *v.* Scott, 5 Rand., 332; Penrice *v.* Wallis, 37 Miss., 172.) And although the question has never been directly ruled upon by this court, we think it has been generally recognized by the legal profession, and the courts throughout the State, ever since the organization of our judicial system, that the appeal has this effect with us. (Fisk *v.* Miller, 20 Tex., 579.) To hold that the appeal would not suspend the decree dissolving the injunction during its pendency in this court, would require an exception to a general rule, as to the effect of appeals upon the judgments of inferior courts, for which we can see no good reason. (42 Tex., 508, 513.) The question presented in this case, it will be observed, is not whether the appeal will revive a judgment which had been dissolved previous to the final judgment from which the appeal is prosecuted, but whether an injunction, which was in full force and effect when the final judgment from which the appeal is prosecuted was rendered, does not remain in force while this judgment is suspended or superseded by the appeal. And this, too, where the sole object of the suit was to obtain the injunction.

It is needless to determine whether there was any error in the ruling of the court excluding the deed of trust as evidence against appellant, George B. Williams, for want of notice that it would be offered as a duly-recorded instrument, without proof of its execution, (Paschal's Dig., art. 3716,) or in admitting it as the deed of Mrs. Williams, on the certificate of its acknowledgment by her as a married woman, by an officer authorized to take such acknowledgment, without proof of its execution by her husband, or that he had consented to its execution by her; for the fact that Wil-

10

liams not only executed the deed himself, but that he also consented and requested his wife to execute it, was, at a subsequent stage of the case, testified to by each of them, as well as by the officer who certified to their acknowledgment of the deed.

That the beneficiaries, or *cestui que trust*, gave an adequate consideration to support the deed, and neither of them participated in, or had any knowledge of, the fraud, (if any was, in fact, practiced upon Mrs. Williams,) is beyond question. That she cannot, therefore, impeach the certificate of her acknowledgment, as she seeks to do in this case, cannot now be regarded as an open question in this court. (Hartley *v.* Frosh, 6 Tex., 208; Shelby *v.* Burtis, 18 Tex., 644.)

It is well settled, that when a party is enjoined from bringing suit upon a note, that such injunction suspends the statute of limitations during the time that it continues in force. (High on Inj., sec. 20.)   We think the like rule should apply when it is not the bringing of a suit upon the note which is enjoined, but the enforcement of the contract given to secure its payment, and which, though valid and binding, could not, aside from the injunction, be enforced by suit, because it embraced the homestead of appellant.

Evidently, the only fair and reasonable construction which can be given to the terms of the trust deed directing the sale of the land in case of default of payment of the notes, is that it should be sold at the court-house door of the county in which it was situated when sold.

For the error of the court in excluding evidence to prove that an appeal had been taken from the judgment of the District Court dissolving the injunction, restraining the trustee from selling the land for which this suit is brought, and which, from the record, we must presume was pending in this court at the time the land in controversy was sold by the trustee, and purchased by appellee, the judgment is reversed, and the cause remanded.

REVERSED AND REMANDED.